<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| HEHR INTERNATIONAL, INC., | : | Hon. Faith S. Hochberg, U.S.D.J. |
| Plaintiff, | : | Civil Action No. 12-1624 (FSH) |
| v. | : | **OPINION & ORDER** |
| SIKA CORPORATION, | : |  |
| Defendant. | : | Date: February 20, 2013 |

**<u>HOCHBERG, District Judge</u>:**

This matter comes before the Court upon Defendant's motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). The Court has reviewed the submissions of the parties and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

On March 14, 2012, Plaintiff Hehr International, Inc. filed a Complaint against Defendant Sika Corporation. (Compl., Mar. 14, 2012, ECF No. 1.) According to the Complaint, Plaintiff is a California corporation that develops and manufactures window and door systems for vehicles. (*Id.* ¶¶ 3-4.) Defendant is a New Jersey corporation that manufactures and supplies sealing, bonding, reinforcement, repairing, and protection products. (*Id.* ¶¶ 5-6.) Among other products, Plaintiff manufactures the "1500 Series" windows for use on Daimler Buses North America's ["DBNA"] Orion VII Bus. (*Id.* ¶ 11.) Plaintiff entered into a contract with Defendant under which Defendant supplied the adhesive bonding material and technical instructions for bonding

1

the window frames to the glass.  (*Id.*)  The terms of the contract were embodied in a document entitled Terms and Conditions of Sale, which states that "[p]roducts sold by [Defendant] are warranted to be free from manufacturing defects and to meet the specifications of the current Technical Data Sheet for one (1) year from date of installation if used within shelf life and installed in accordance with Seller's instructions."  (Terms and Conditions of Sale ¶ 5, Ex. A to Compl.)  The contract also limited Plaintiff's recovery if this warranty were breached.  (*Id.* (stating that "in no event and under no circumstances shall Sika be liable to purchaser in any manner or to any extent, for any indirect, incidental, special, punitive, exemplary or consequential damages, whether foreseeable or unforeseeable, or whether based on contract, tort, strict or products liability, or any other legal theory, except as precluded by law.").)

      Plaintiff began assembling the 1500 Series windows in or around October 2007.  (Compl. ¶ 19.)  Before and during assembly, the parties allegedly exchanged several communications concerning appropriate methods for applying Defendant's bonding materials, specifically what pre-treatment solution(s) to apply and whether to abrade the bonding area before application.  (*Id.* ¶¶ 15-19.)  In or around June 2008, DBNA informed Plaintiff that the glass in the windows Plaintiff had supplied was separating from its frame.  (*Id.* ¶ 20.)  Plaintiff notified Defendant of the potential defect in the bonding materials and/or instructions, and in July 2008, Defendant allegedly acknowledged in writing the "bonding failures."  (*Id.* ¶¶ 21, 23; *see also* ¶ 49.)  On numerous occasions thereafter, Defendant recommended changes in the pre-treatment process to enhance adhesion and prevent separation.  (*Id.* ¶¶ 24, 28, 31, 36.)

      DBNA asked Plaintiff to inspect all of the windows that had already been installed, and ultimately demanded a complete retrofit of all the 1500 Series windows in Canada and the United States, for which Plaintiff incurred the cost.  (*Id.* ¶¶ 41, 46.)  Defendant allegedly refused

to participate materially in the inspection or replacement process or to compensate Plaintiff for the costs of that process. (*Id.* ¶¶ 39, 44, 46, 48.) On the basis of these allegations, Plaintiff filed the instant Complaint alleging breach of warranty and negligence. (*Id.* ¶¶ 51-70.) Defendant subsequently filed the present motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot. to Dismiss, Sept. 4, 2012, ECF No. 10.)

## II.     LEGAL STANDARD

To survive a motion to dismiss filed under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotation marks omitted).

When considering a motion to dismiss under *Iqbal*, the Court must conduct a two-part analysis. "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotation marks omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions

devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks and alterations omitted).

### III. DISCUSSION

Defendant argues that the Complaint should be dismissed in its entirety because: (1) Plaintiff's negligence claim is barred by the economic loss doctrine and Plaintiff may therefore recover exclusively in contract, (Mot. Br. 10-19); and (2) Plaintiff cannot recover consequential damages on its breach of warranty claim because such damages are expressly excluded in the parties' contract and their exclusion is not unconscionable. (*Id.* 19-25.)

#### A. Negligence

Under New Jersey law,[1] the New Jersey Products Liability Act ["PLA"] subsumes common-law tort claims involving harm from products. S*ee Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991); *Brown ex rel. Estate of Brown v. Philip Morris Inc.*, 228 F. Supp. 2d 506, 515-16 (D.N.J. 2002); *Tirrell v. Navistar Int'l, Inc.*, 248 N.J. Super. 390, 398 (App. Div. 1991). The Court will therefore address whether Count Two of the Complaint, which purports to be a negligence claim, states a product liability claim under the PLA.

Under the PLA, product liability arises when a product causes harm because it was not reasonably fit for its intended purpose. N.J.S.A. § 2A:58C-2. "Harm" is defined in relevant part as "physical damage to property, *other than to the product itself*." N.J.S.A. § 2A:58C-1(b)(2) (emphasis added). The statute's exclusion of harm "to the product itself" is a codification of the economic loss doctrine, which limits the scope of tort claims arising from defective products by requiring the purchaser to seek recovery in contract, not tort, for defects in the purchased

---

[1] The parties do not dispute that, under the applicable choice of law rules, New Jersey law governs the claims in this case.

product.  *See Paramount Aviation Corp. v. Agusta*, 288 F.3d 67, 70 (3d Cir. 2002) ("The Supreme Court of New Jersey held 'that a commercial buyer seeking damages for economic loss resulting from the purchase of defective goods may recover from an immediate seller . . . for breach of warranty under the [Uniform Commercial Code], but not in strict liability or negligence.'" (quoting *Spring Motors Distrib., Inc. v. Ford Motor Co.*, 98 N.J. 555, 561 (1985)).

The parties do not dispute that Defendant's adhesive is "the product itself" and that the economic loss doctrine precludes a product liability claim for damaged adhesive.  (Opp'n Br. 19 Oct. 15, 2012, ECF No. 15; Reply Br. 4-5, Oct. 26, 2012, ECF No. 20.)  Rather, the parties disagree as to whether Plaintiff's windows are "property other than the product itself" and whether Plaintiff has alleged that there was damage to the windows that can support a product liability claim.  Specifically, the parties dispute the applicability of the integrated product doctrine, "a corollary to the economic loss rule," that "preclude[s] tort-based recovery when a defective product is incorporated into another product which the defective product then damages."  *Dean v. Barrett Homes*, 204 N.J. 286, 289, 298 (2010).  Plaintiff contends that this case is akin to *Dean*, in which the New Jersey Supreme Court declined to apply the integrated product doctrine to preclude tort recovery for a toxic mold infestation in a house caused by defective synthetic stucco.  (Opp'n Br. 19-20.)  Defendant, on the other hand, contends that this case is akin to a series of "spice blend" cases, in which courts have held that when a contaminated spice is irrevocably blended into a spice mixture, the spice mixture is an integrated product and the economic loss doctrine bars tort recovery for damage to the entire mixture.  (Mot. Br. 13; Reply Br. 8-10 (citing *Adams Extract & Spice, LLC v. Van De Vries Spice Corp.*, Civ. No. 11-720, 2011 WL 6756973 (D.N.J. Dec. 23, 2011); *Int'l Flavors & Fragrances, Inc. v.*

5

*McCormick & Co.*, 575 F. Supp. 2d 654 (D.N.J. 2008); *Travelers Indem. Co. v. Dammann & Co., Inc.*, 592 F. Supp. 2d 752 (D.N.J. 2008)).

The Complaint here is akin to neither *Dean* nor the spice blend cases. In each of those cases, the respective product defects, either failure of stucco to create a proper seal or contamination of a component spice, caused separate harm to a finished product, namely mold infestation of a house or contamination of a spice mixture. In each case, the plaintiff sought to recover separately in tort for contamination of the finished product. In contrast, Plaintiff's Complaint merely alleges that the adhesive failed and that as a result, Plaintiff was required to "repair *or* replace" the windows. (Compl. ¶¶ 2, 37, 39, 40, 46-49, 59-60, 62 (emphasis added).) The Complaint characterizes this repair or replacement process as a "retrofit," (*id.* ¶¶ 2, 45-46, 49, 62, 69), which is defined as "install[ing] (new or modified parts or equipment) in something previously manufactured or constructed." *Merriam-Webster's Collegiate Dictionary, Tenth Edition* (parenthetical in original). Thus, unlike *Dean* or the spice blend cases, there is no allegation in this case that a defect in the individual component, namely the adhesive, infected, contaminated, or otherwise spread harm to the finished product, namely the installed window. The only defect alleged in the Complaint relates to the adhesive itself, and it is not alleged that the windows have been irreparably harmed. To the contrary, a plain reading of the Complaint indicates that the windows may be repaired by installing effective adhesive in the previously manufactured windows. Thus, there is no allegation of "physical damage to property, other than to the product itself," as required to state a claim under the PLA. Consequently, Count Two of the Complaint, as a tort Claim, is barred and Plaintiff's remedies are those set forth in the contract between the parties.

    **B.**    **Breach of Warranty**

Defendant argues that Plaintiff cannot recover consequential damages on its breach of warranty claim because such damages are expressly excluded in the parties' contract.[2] Under New Jersey's statutory implementation of the Uniform Commercial Code ["UCC"], "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable."[3] N.J.S.A. § 12A:2-719(3). Interpreting this provision, the New Jersey Supreme Court held in *Kearney & Trecker Corp. v. Master Engraving Co., Inc.* that

---

[2] Although Defendant contends that the Complaint should be dismissed in its entirety, it does not offer any basis to dismiss Plaintiff's breach of warranty claim outright. Assuming without deciding that consequential damages are not recoverable, Plaintiff could still succeed on the merits of its breach of warranty claim if it proves that: (1) there was a contract between the parties; (2) there was a breach of that contract; (3) there are damages flowing therefrom; and (4) Plaintiff performed its own contractual obligations. *See Frederico v. Home Depot, Inc.*, 507 F.3d 188, 203 (3d Cir. 2007). If Plaintiff proves each of these elements, it may still recover the ordinary measure of damages for a breach of warranty claim, namely "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." N.J.S.A. § 12A:2-714. Thus, even if the Court were to dismiss the remedy of consequential damages, this does not require dismissal of the claim and other remedies sought.

[3] Another provision within Section 12A:2-719 of the UCC provides that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in [the UCC]." N.J.S.A. § 12A:2-719(2). In *Chatlos Sys., Inc. v. Nat'l Cash Register Corp.*, the Court of Appeals considered the interplay between this provision and the provision addressing consequential damages, observing that

> [s]everal cases have held that when a limited remedy fails of its purpose, an exclusion of consequential damages also falls, but approximately the same number of decisions have treated that preclusion as a separate matter. New Jersey has not taken a position on this question, so in this diversity case we must predict which view the New Jersey Supreme Court would adopt if the question were presented to it.

635 F.2d 1081, 1086 (3d Cir. 1980). The *Chatlos* court determined that "the better reasoned approach is to treat the consequential damage disclaimer as an independent provision, valid unless unconscionable," but further noted that a limited "remedy's failure of essential purpose, while a discrete question, is not completely irrelevant to the issue of the conscionability of enforcing the consequential damages exclusion." *Id.* at 1086-87. The New Jersey Supreme Court ultimately adopted this approach in *Kearney*, 107 N.J. at

> N.J.S.A. 12A:2-719 does not require the invalidation of an exclusion of consequential damages when limited contractual remedies fail of their essential purpose. It is only when the circumstances of the transaction, including the seller's breach, cause the consequential damage exclusion to be inconsistent with the intent and reasonable commercial expectations of the parties that invalidation of the exclusionary clause would be appropriate under the Code.

107 N.J. 584, 600 (1987).

In *Viking Yacht Co., Inc. v. Composite One LLC*, the Court of Appeals for the Third Circuit considered the applicability of Section 12A:2-719(3) to a case in which ship manufacturers sued a supplier of a protective gel for breach of warranty after the gel failed, causing damage to the plaintiffs' ships. 385 F. App'x 195 (3d Cir. 2010). The court below had refused to enforce a contractual exclusion of consequential damages, concluding that such exclusion was unconscionable because it reduced damages by a factor of 93 as to one plaintiff and 274 as to the other. *Id.* at 210. Applying the UCC and the precedent set forth in *Kearney*, the Third Circuit affirmed the District Court's refusal to enforce the exclusion of consequential damages, finding no reason to "disturb the District Court's calculus" that enforcement of the exclusion would "render the damages unconscionably low." *Id.* at 210. The Third Circuit thus endorsed the view that a consequential damages exclusion may be unenforceable under New Jersey law where the disparity of damages with and without the exclusion is excessive.[4] *Id.* at

---

599.

[4] Defendant argues that *Chatlos* and *Kearney* are inconsistent with the analysis in *Viking Yacht* because the former cases focus on the parties' relative bargaining power and sophistication, or "procedural unconscionability," whereas *Viking Yacht* rests on the disparity in "raw dollar value" of actual and limited damages, or "substantive unconscionability." (Reply Br. 13-14.) Defendant contends that because *Viking Yacht* is a non-precedential opinion, the Court should ignore the possibility that disparity of remedy may be a basis to invalidate a consequential damages exclusion and that the procedural unconscionability described in *Chatlos* is required to invalidate such a contractual provision. (*Id.* 10-14.) To the contrary, while *Chatlos* characterizes bargaining power and sophistication as "important," it also considers the limited remedy's

209-10. Because this determination is a factually intensive inquiry that "depends upon the circumstances involved," *id.* at 209 (citing *Kearney*, 107 N.J. at 597), the Court declines to dismiss Plaintiff's demand for consequential damages at the motion to dismiss stage.[5]

## IV.   CONCLUSION & ORDER

For the reasons stated above;

**IT IS** on this 20th day of February, 2013,

**ORDERED** that Defendants' Motion to Dismiss (docket #10) is **GRANTED** in part and **DENIED** in part; and

**IT IS FURTHER ORDERED** that Plaintiff's claim for negligence (Count Two) is **DISMISSED**; and

**IT IS FURTHER ORDERED** that Plaintiff's claim for breach of warranty (Count One) will proceed.

/s/ Faith S. Hochberg
**Hon. Faith S. Hochberg, U.S.D.J.**

---

"failure of essential purpose" and examines whether actual damages "came within the realm of expectable losses." 635 F.2d at 1086-87. Moreover, *Kearney* expressly states that a consequential damages exclusion may be invalidated if it is "inconsistent with the intent and reasonable commercial expectations of the parties," considerations that do not hinge on relative bargaining power or sophistication. 107 N.J. at 600. Thus, the Court finds no inconsistency among *Chatlos*, *Kearney*, and *Viking Yacht*. That *Viking Yacht* is a non-precedential opinion is not a basis to ignore its reasoning that a consequential damages exclusion may be unenforceable under New Jersey law where enforcement of the exclusion would "render the damages unconscionably low." 385 F. App'x at 210.

[5] Moreover, the Court observes that it may be premature at this stage to assess whether any limitation of remedies is appropriate. *See Cummings v. Allstate Ins. Co.*, Civ. No. 11-2691, 2011 WL 4528366 (E.D. Pa. Sept. 30, 2011) (denying a motion to dismiss a demand for consequential damages, reasoning that before a finding of liability, "damages are merely speculative" and therefore declining to issue an advisory opinion on that subject).

9